

## NUMBER 13-19-00608-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI – EDINBURG

---

KEVIN BUSTAMANTE PINEDA,                                          Appellant,

v.

THE STATE OF TEXAS,                                          Appellee.

---

### On appeal from the 370th District Court
### of Hidalgo County, Texas.

---

## MEMORANDUM OPINION

### Before Chief Justice Contreras and Justices Longoria and Tijerina
### Memorandum Opinion by Justice Tijerina

Appellant Kevin Bustamante Pineda appeals his conviction of manslaughter, a second-degree felony. *See* TEX. PENAL CODE ANN. § 19.04. Pineda was sentenced to fifteen years' confinement. By four issues, Pineda contends that the evidence is insufficient (issue one) and there are errors in the jury charge (issues two through four). We affirm.

# I. BACKGROUND

On October 16, 2016, Pineda was at a bar in McAllen, Texas that is owned by his brother, Israel Pineda (Israel). At approximately 2:30 a.m., Pineda argued with Anastacio Ramirez. During the argument, Pineda's cousin, Humberto Sanchez (referred to as "Beto" throughout the trial) placed his body between Pineda and Ramirez. Pineda then punched Ramirez in the head causing Ramirez to fall back and hit the back of his head when he landed on the floor. Beto then kicked and stomped on Ramirez's head while Ramirez lay on the ground unconscious. Members of Pineda's family and employees of the bar then carried Ramirez to a couch where he lay unconscious for approximately two hours. Pineda and Beto left shortly after Ramirez became unconscious.

After Pineda and Beto left, Pineda's mother, Anna Pineda (Anna), and Israel, an alleged certified emergency medical technician, arrived at the bar. When Israel arrived, he tended to Ramirez and then left shortly thereafter. Pineda's other brother, Gabriel Pineda (Gabriel), arrived at the bar, and he called a friend, Jessica Gonzalez, sometime after 3:00 a.m., explaining that there had been an altercation at the bar and asking Gonzalez to come to the bar. Gonzalez arrived and found Ramirez asleep and snoring on a couch. Gonzalez attempted to clean the blood off Ramirez's face and put ice on his injuries. Subsequently, Gonzalez noticed that Ramirez's breathing patterns had changed. Becoming alarmed, Gonzalez insisted on taking Ramirez to the hospital, and en route, she called 911. Anna accompanied Gonzalez to the emergency room, and they arrived at the hospital at 4:46 a.m.

Ramirez had several injuries to his face, and the back portion of his skull was

2

fractured. Ramirez died that day at 10:36 a.m.

At around the same time, Pineda provided a statement to Investigator David Garza of the McAllen Police Department. Pineda informed Investigator Garza that he disliked Ramirez because Ramirez would tell Israel negative things about Pineda. Pineda stated that Ramirez was mad and approached him while the two men argued. Although Pineda acknowledged that he did not know what Ramirez was going to do, he claimed he punched Ramirez in self-defense.[1] There is no evidence that Ramirez raised his fist or threatened Pineda verbally or physically.[2]

Pineda and Beto were arrested for causing Ramirez's death. Pineda was charged with murder as a principal and as a party with a deadly weapon allegation.

At trial, Norma Jean Farley, M.D., testified that the cause of Ramirez's death was blunt force trauma to his skull, which resulted from Ramirez falling to the ground and hitting the back of his head after Pineda punched him. Dr. Farley did not attribute Ramirez's death to Beto's acts of kicking and stomping on Ramirez.

The State argued that Pineda either acted as a principal in causing Ramirez's death or as a party with Beto. Pineda objected to the jury charge's inclusion of an instruction on the law of parties arguing that such an instruction gave the jury "an unauthorized opportunity to convict Mr. Pineda for the actions of another." Pineda also objected to the charge's exclusion of a self-defense instruction. Finally, Pineda objected

---

[1] The record contains a video of Pineda's statement to Investigator Garza, and Garza testified to these facts as the video was played for the jury.

[2] The trial court admitted a video of the altercation for the jury to watch. In the video, Ramirez does not raise his fists, and it appears that Pineda surprised Ramirez when he punched him.

3

to the charge on the basis that it lacked instructions on "criminal negligent homicide, and misdemeanor Class A assault causing bodily injury," which he claimed were lesser-included offenses. The trial court overruled all of Pineda's objections.

The jury did not find Pineda guilty of murder as charged by the State, but it found him guilty of the lesser-included offense of manslaughter and it made an affirmative deadly weapon finding. Pineda received a sentence of fifteen years' confinement. This appeal followed.

## II.    SUFFICIENCY OF THE EVIDENCE

By his first issue, Pineda contends that the evidence is insufficient because Beto and Pineda acted independently. Though he does not challenge a specific element of manslaughter, Pineda argues that under the law of parties, the State failed to show that he encouraged, agreed, or supported Beto's conduct. The State responds that the evidence is sufficient to establish Pineda guilty of manslaughter as either the principal actor or as a party.

### A.    Standard of Review and Applicable Law

In determining the sufficiency of the evidence, we consider all the evidence in the light most favorable to the verdict and determine whether a rational factfinder could have found the essential elements of the crime beyond a reasonable doubt based on the evidence and reasonable inferences from that evidence. *Whatley v. State*, 445 S.W.3d 159, 166 (Tex. Crim. App. 2014); *Brooks v. State*, 323 S.W.3d 893, 898–99 (Tex. Crim. App. 2010) (plurality op.). The factfinder is the exclusive judge of the facts, the credibility of witnesses, and the weight to be given their testimony. *Brooks*, 323 S.W.3d at 899. We

4

resolve any evidentiary inconsistencies in favor of the judgment. *Id.*

Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). "Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Villarreal*, 286 S.W.3d at 327; *see Malik*, 953 S.W.2d at 240.

A person commits the offense of manslaughter if he "recklessly causes the death of an individual." TEX. PENAL CODE ANN. § 19.04. A person "acts recklessly, or is reckless, with respect to . . . the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that . . . the result will occur." *Id.* § 6.03(c). "The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint." *Id.*

Additionally, in this case a hypothetically correct jury charge would instruct the jury that under the law of parties, Pineda is guilty of manslaughter if he, acting with intent to promote or assist the commission of the offense, solicited, encouraged, directed, aided, or attempted to aid the other person to commit the offense. *Id.* § 7.02(a)(2).

**B.    Analysis**

We need not determine whether the evidence supports a finding that Pineda acted as a party to the offense because he does not challenge the sufficiency of the evidence

5

supporting the jury's finding that he acted as a principal in causing Ramirez's death. *See Anderson v. State*, 416 S.W.3d 884, 889 (Tex. Crim. App. 2013) ("When the charge authorizes the jury to convict the defendant on more than one theory, as it did in this case, the verdict of guilt will be upheld if the evidence is sufficient on any theory authorized by the jury charge." (citing *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004))). Therefore, even assuming Pineda is correct that the evidence is insufficient to support that he acted as a party, we would not reverse the judgment.[3] *See* TEX. R. APP. P. 44.2(a) (setting forth standard for reversible constitutional error in criminal cases); *Anderson*, 416 S.W.3d at 889; *Lardieri v. State*, No. 03-15-00247-CR, 2017 WL 160897, at *5 (Tex. App.—Austin Jan. 13, 2017, no pet.) (mem. op., not designated for publication) ("Thus, we conclude that the evidence was legally sufficient to support the jury's guilty verdict for the offense of attempted capital murder against appellant as a principal actor and do not address the evidence to support her conviction as a party for this offense."). We overrule Pineda's first issue.[4]

### III. CHARGE ERROR

By his second through fourth issues, Pineda contends that the charge contained

---

[3] Nonetheless, the evidence established that Pineda punched Ramirez in the face causing Ramirez to fall to the ground, hit the back of his head, and fracture his skull, which caused his death.

[4] By what appears to be a sub-issue to his first issue, Pineda states:

"The special issue presents a more difficult circumstance. It asks in the alternative, if the use of his hand (Appellant's) or Sanchez['s] use of his feet amounted to the use of a weapon (See charge on Special Issue). Again, the punch of Appellant with his hand was not only defensive, but fairly harmless."

We are unable to address this issue as Pineda has not provided a clear and concise argument with citation to proper authority. *See* TEX. R. APP. P. 38.1(i). Therefore, we overrule this sub-issue.

reversible error. Pineda argues that the trial court erred by not including an instruction on independent impulse in the jury charge (second issue); that an instruction on self-defense should have been included in the jury charge (third issue) and, finally, that the trial court improperly charged the jury on the law of parties (fourth issue).

**A.     Standard of Review**

Analysis of jury charge error requires a two-step process. *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994); *see Sakil v. State*, 287 S.W.3d 23, 25–26 (Tex. Crim. App. 2009). First, we determine whether error exists, and if so, we then must determine whether the appellant suffered harm from that error. *See Abdnor*, 871 S.W.2d at 731–32. The degree of harm required for reversal depends on whether the appellant objected to the jury charge at trial: if the appellant did not object, then we must decide whether "egregious harm" has occurred, and if the appellant did object to the jury charge, we must determine whether there was some harm. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g); *see* TEX. CODE CRIM. PROC. ANN. art. 36.19; *Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008); *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996).

A trial court is required to submit a jury charge that sets out the law "applicable to the case." TEX. CODE CRIM. PROC. ANN. art. 36.14.

**B.     Independent Impulse Instruction**

Pineda claims that he was entitled to an instruction on the independent impulse defense. However, the Texas Court of Criminal Appeals in *Solomon v. State* held that the defensive instruction of independent impulse is not required as the issue is not a

statutorily enumerated defense and merely serves to negate the conspiracy liability element of the State's case. 49 S.W.3d 356, 368 (Tex. Crim. App. 2001). Moreover, Pineda did not request such an instruction or otherwise object to its omission. *See Posey v. State*, 966 S.W.2d 57, 62 (Tex. Crim. App. 1998) ("[A] a defensive issue is not 'applicable to the case' for purposes of Article 36.14 unless the defendant timely requests the issue or objects to the omission of the issue in the jury charge."). Accordingly, the trial court did not err in failing to sua sponte include an independent impulse instruction in the charge. We overrule Pineda's second issue.

## C.    Self-Defense

By his third issue, Pineda contends that the trial court improperly denied his request to include a self-defense instruction in the jury charge. Pineda argues that the evidence showed that Ramirez "was coming around toward him in a fighting stance" and "it appeared that Ramirez was coming angry towards" him.[5]

### 1.    Applicable Law

A trial court's decision to deny a defensive issue in a jury charge is reviewed for an abuse of discretion. *See Wesbrook v. State*, 29 S.W.3d 103, 122 (Tex. Crim. App. 2000). When reviewing a trial court's decision to deny a requested defensive instruction, we view the evidence in the light most favorable to the defendant's requested submission. *Bufkin v. State*, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006).

Pursuant to article 36.14, the trial court is required to instruct the jury on statutory

---

[5] Although Pineda neither provides citation to appropriate authority nor offers substantive argument applying the law to the facts, we will nonetheless in our sole discretion address this issue as we are able to construe it without making his argument. *See* TEX. R. APP. P. 38.1(i).

defenses, affirmative defenses, and justifications when they are raised by the evidence and requested by the defendant. *Walters v. State*, 247 S.W.3d 204, 208–09 (Tex. Crim. App. 2007). "A defendant is entitled to an instruction on self-defense if the issue is raised by the evidence, whether that evidence is strong or weak, unimpeached or contradicted, and regardless of what the trial court may think about the credibility of the defense." *Lee v. State*, 442 S.W.3d 569, 580 (Tex. App.—San Antonio 2014, no pet.) (quoting *Ferrel v. State*, 55 S.W.3d 586, 591 (Tex. Crim. App. 2001)). "Raised by the evidence" means "there is some evidence, from any source, on each element of the defense that, if believed by the jury, would support a rational inference that th[e] element is true." *Shaw v. State*, 243 S.W.3d 647, 657–58 (Tex. Crim. App. 2007). Defensive issues may be raised by the testimony of any witness. *VanBrackle v. State*, 179 S.W.3d 708, 712–13 (Tex. App.—Austin 2005, no pet.).

Texas Penal Code § 9.31 provides that "a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." Tex. Penal Code Ann. § 9.31(a). Section 9.31(b) sets out a list of exceptions where the use of force is not justified, including "in response to verbal provocation alone[.]" *Id.*

### 2. Analysis

Here, there is no evidence that Ramirez came over to Pineda in a "fighting stance" as Pineda claims. The video recording does not show this and there was no testimony to that effect. Moreover, before the altercation occurred, Beto stepped between the two men, and Ramirez did not strike or attack either man. In addition, the mere fact that Ramirez

9

may have been angry does not rise to the level that would cause a person to reasonably believe that the use of force was necessary in this situation. In fact, Pineda stated to Investigator Garza that he did not know what Ramirez would do. There is no evidence that Ramirez took any physical actions against Pineda that would have warranted Pineda into believing that deadly force was immediately necessary to protect himself from Ramirez or that Pineda was in fear of serious bodily injury or death.

We conclude that the trial court did not err by refusing to charge the jury on the issue of self-defense because the evidence did not sufficiently raise the issue. *See Clifton v. State*, 21 S.W.3d 906, 907–08 (Tex. App.—Fort Worth 2000, pet. ref'd) ("While there was evidence that [the victim] slapped [the appellant], there was no evidence that [the] appellant ran over [the victim] in order to protect himself. Nor was there any testimony that [the] Appellant was in fear of bodily harm."); *cf. Holloman v. State*, 948 S.W.2d 349 (Tex. App.—Amarillo 1997, no pet.) (providing that a self-defense instruction should have been given because testimony indicated that the victim was the first to use force, the defendant feared for his safety, and the defendant met force with force). We overrule Pineda's third issue.

## D. Law of Parties Instruction

By his fourth issue, Pineda contends that the trial court improperly instructed the jury regarding the law of parties. We will assume without deciding that the trial court erroneously instructed the jury on the law of parties. Nonetheless, error, if any, is harmless because as we set out above, Pineda does not challenge the finding that he committed the offense as the principal actor, and we may affirm the judgment on that basis. *See* TEX.

R. APP. P. 44.2. Accordingly, we overrule Pineda's fourth issue.

## IV.    CONCLUSION

We affirm the trial court's judgment.[6]

JAIME TIJERINA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
6th day of May, 2021.

---

[6] Having found no jury charge error, it is not necessary to perform a harm analysis. *See Abdnor v. State*, 871 S.W.2d 726, 731–32 (Tex. Crim. App. 1994).