**Desmond Lamar DAVIS, Appellant**

v.

**The STATE of Texas, State**

NO. 02–15–00087–CR, NO. 02–15–00088–CR

Court of Appeals of Texas, Fort Worth.

DELIVERED: May 5, 2016

Lisa Mullen, Fort Worth, TX, for Appellant.

Sharen Wilson, Criminal District Attorney; Debra A. Windsor, Chief of the Post–Conviction Division; Steven W. Conder, Brock Groom, Brooke Panuthos, Assistant Criminal District Attorneys for Tarrant County, Fort Worth, TX, for State.

PANEL: DAUPHINOT, WALKER, and SUDDERTH, JJ.

## OPINION

### LEE ANN DAUPHINOT, JUSTICE

A jury convicted Appellant Desmond Lamar Davis of two offenses of aggravated robbery with a deadly weapon, charged in separate indictments. In each case, the jury found the allegations in the enhancement paragraph to be true upon Appellant's plea of true and assessed his punishment at fifteen years' and thirty years' confinement respectively, imposing a $1,000 fine for each offense. The trial

court sentenced him accordingly. In five points, Appellant challenges the sufficiency of the evidence to support his conviction for aggravated robbery of the bystander customer and contends that the trial court reversibly erred by denying his motion to suppress his statement as well as his requested jury charge on the law of parties and requested instructions on necessity and the lesser-included offense of theft. Because we hold that the evidence is sufficient to support Appellant's conviction for aggravated robbery of the bystander and that the trial court did not otherwise reversibly err, we affirm the trial court's judgments.

## I. Brief Facts

One complainant, a cashier, was working during the 4:00-to-11:00 evening shift at a store called both ECS Food Store and the Smoke Shop when three men robbed her. She identified Appellant as one of the men who robbed her and testified that she had met him previously when she was training at another store. She knew Appellant as Dez. The three men had gone in and out of the store once before they began the robbery. At about 9:30 p.m., Appellant came back into the store and began talking to the cashier. He also spoke to the sole customer, the other complainant. The two other men came into the store and pointed guns at the cashier and the customer. Appellant jumped over the counter and was the first of the assailants to take money from the register. The men also took money from the customer.

The cashier ran, but one of the men grabbed her and pulled her back to the register. At that point the customer ran to the back of the store. Appellant was at the register, pulling money out. He told the robber in the striped shirt to take the cashier's cell phone and the store phone.

But the men left without either phone. When the robbers left, the cashier locked the door and called 911. She thought the customer had left earlier, but when he reappeared, she discovered that he had locked himself in the bathroom.

At trial, the jury watched the recording of the robberies and viewed and heard the recording of Appellant's confession.

## II. Evidence of Participation in Aggravated Robbery of Customer

In his third point, Appellant argues that the evidence is insufficient to show his participation in the aggravated robbery of the customer. In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[1] The customer testified that Appellant had spoken to him inside the store and that he had made a purchase and was leaving the store when the two men with guns came in and pointed their guns at him. The customer dropped his drink and begged them not to shoot him. The men with guns were very close to the customer. They pointed their guns at him and stole his money while the cashier screamed. Appellant argues that the record shows that he told the gunmen not to steal from the customer, defeating the theft element of that robbery. The evidence shows that while he told the men with the guns not to take the customer's money, Appellant also said, "[W]e just come here for the store." Further, when the customer dropped his cash to the floor, the men with guns took it. Finally, the evidence also shows that Appellant was the first of the three men to

---

**1.** *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

go behind the counter to take money from the cash register.

■ Robbery is an assaultive offense.[2] The gravamen of the offense of robbery is the assaultive conduct, not the theft.[3] Theft is only the underlying offense.[4] The allowable unit of prosecution for robbery is the number of persons assaulted, not the number of thefts.[5] Appellant and the gunmen were in the process of stealing the money from the cash register when the gunmen pointed their guns at the customer and stole his money. That is, the evidence is sufficient to support the jury's determination that Appellant intended to steal the store's money and the assailants threatened the customer while they were stealing the money from the cash register. Additionally, although Appellant told his two partners not to steal from the customer because they had come to steal the store's money, the record is sufficient to support a jury finding that Appellant and his two cohorts shared the money they took from both the customer and from the store.

Whether the jury concluded that the three men threatened the customer in the course of committing theft of the money in the cash register or in the course of committing theft from the customer, or both, the State satisfied its burden of proving that Appellant, as a party, assaulted the customer at gunpoint while in the course of committing theft. We overrule Appellant's third point.

## III. Confession

■ In his first point, Appellant contends that the trial court erred by denying his motion to suppress his confession because the detective who secured the confession had told him that it could be used for him at trial instead of telling him only that the statement could be used against him. The Texas Court of Criminal Appeals has held more than once that when the evidence is uncontroverted that a law enforcement officer who secured the defendant's written confession told the defendant that the confession could be used "for or against him" or "for and against him" or that "they might go easy on him if he confessed," such evidence is inadmissible at trial because it violates article 38.22 of the code of criminal procedure.[6]

When there is a factual dispute whether such a representation was made, the trial court decides whether the confession is admissible.[7] We review that decision for an abuse of discretion.[8]

Appellant was questioned by police and admitted his guilt. The recording of his confession was admitted before the jury in State's Exhibit 15. The State candidly concedes that "[u]nder questioning from defense counsel, Detective Beyer agreed that he may have told the appellant something to the effect that cooperating in giv-

2. *Ex parte Hawkins*, 6 S.W.3d 554, 560 (Tex. Crim.App.1999).

3. *Id.*

4. *Id.*

5. *Id.*

6. *Sterling v. State*, 800 S.W.2d 513, 518–19 (Tex.Crim.App.1990), *cert. denied*, 501 U.S. 1213, 111 S.Ct. 2816, 115 L.Ed.2d 988

(1991); *see also* Tex.Code Crim. Proc. Ann. art. 38.22 (West Supp.2015); *cf. Dinkins v. State*, 894 S.W.2d 330, 348–50 (Tex.Crim. App.) (holding trial court has discretion to determine admissibility when evidence conflicts regarding improper warning), *cert. denied*, 516 U.S. 832, 116 S.Ct. 106, 133 L.Ed.2d 59 (1995).

7. *Dinkins*, 894 S.W.2d at 348.

8. *Id.*

ing a statement would make things go easier or could be used for him at trial." But the trial judge watched fifteen minutes of the interrogation and stated, "I never heard him say anything like you testified to."

We have carefully examined the recording of the interrogation and have determined that the officer told Appellant that he had an opportunity to tell his side of the story and that he could be a man by admitting his guilt. In context, however, the officer was asking Appellant to help the officer with the investigation. The officer never really suggested to Appellant that he would be helping himself in court by admitting his guilt. We consequently hold that the trial court did not abuse its discretion by denying Appellant's motion to suppress the statement.[9] We therefore overrule Appellant's first point.

## IV. Charge on the Law of Parties

■ In his second point, Appellant contends that, regarding the law of parties, the trial court erred by refusing to apply the law to the facts and circumstances of this case in the application paragraph of the jury charge. The jury charge in each case provided the following in the abstract portion:

A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense.

The application paragraph provided the following:

Now bearing in mind the foregoing instructions, if you find from the evidence beyond a reasonable doubt that on or about the 5th day of August 2014, in

Tarrant County, Texas, [Appellant], acting alone or as a party as that term has been previously defined, did intentionally or knowingly, while in the course of committing theft of property, and with intent to obtain or maintain control of said property, threaten or place [the complainant] in fear of imminent bodily injury or death, and [Appellant] used or exhibited a deadly weapon, to-wit; a firearm, then you will find [him] guilty of aggravated robbery as charged in the indictment.

The Texas Court of Criminal Appeals has repeatedly held that a jury charge must apply the facts of the specific case to the law in the application paragraph. Specifically, the Court has explained that

a general reference to the law of parties in the application paragraph is sufficient and is not error when the defendant does not object and request a narrowing of the specific statutory modes of conduct that constitute party liability—whether he "solicited, encouraged, directed, aided or attempted to aid" another specified person to commit the offense. But if the defendant does request that the application paragraph refer only to those specific party-liability acts that are supported by the evidence, then he is entitled to such a narrowing. The failure to narrow the specific modes of party-liability conduct when properly requested is reversible error if the defendant has suffered actual harm to his rights. Under *Almanza*, we assess whether the defendant has suffered actual harm "in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed

9. *See id.*

by the record of the trial as a whole." That general approach applies to all jury-charge error, including the failure to specifically apply the law of parties in the application paragraph.[10]

■ Appellant properly objected to the jury charge on these grounds. Although Appellant's objection to the charge was not as specific as the request addressed by the *Vasquez* court, we shall, nevertheless, assume error and address harm.[11] Error in the charge, if timely objected to in the trial court, requires reversal if the error was "calculated to injure the rights of [the] defendant," which means no more than that there must be some harm to the accused from the error.[12] In other words, a properly preserved error will require reversal as long as the error is not harmless.[13] In making this determination, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." [14]

The record reflects that the jury had the benefit of both the video recording of the robberies and the audio and video recording of Appellant's statement regarding his various versions of his degree of complicity. There is no dispute that he participated in the theft portion of the robberies as a principal. The issue is whether he was guilty of threatening and placing the complainants in fear and using or exhibiting a deadly weapon. The jury saw Appellant talking to the other two men participating in the robberies and heard Appellant's admission in his statement that they all had planned the store robbery. The jury members also were aware that Appellant had given orders to the two co-robbers to take the cashier's phone and the store's phone, although they took neither. Additionally, Appellant instructed the two men with guns not to take money from the customer because they had "come for the store." Again, his cohorts ignored his instruction. But Appellant did issue both instructions to the men with guns, a clear indication that he was working in concert with the gunmen. Considering the record as a whole, it is clear that Appellant suffered no harm from the global charge on the law of parties provided in the application paragraph of each jury charge.[15] We overrule Appellant's second point.

## V. Necessity Instruction

■ In his fourth point, Appellant argues that the trial court reversibly erred by denying his requested necessity instruction. In our review of a jury charge, we first determine whether error occurred; if error did not occur, our analysis ends.[16]

■ A defendant is entitled to an instruction on every defensive issue raised

10. *Vasquez v. State,* 389 S.W.3d 361, 368–69 (Tex.Crim.App.2012) (citations omitted).

11. *See Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1985) (op. on reh'g).

12. Tex.Code Crim. Proc. Ann. art. 36.19 (West 2006); *Abdnor v. State,* 871 S.W.2d 726, 731–32 (Tex.Crim.App.1994); *Almanza,* 686 S.W.2d at 171; *see also Barrios v. State,* 283 S.W.3d 348, 350 (Tex.Crim.App.2009) ("A claim of jury-charge error is reviewed using the procedure set out in *Almanza.*").

13. *Almanza,* 686 S.W.2d at 171.

14. *Id.* ; *see also Ovalle v. State,* 13 S.W.3d 774, 786 (Tex.Crim.App.2000).

15. *See Ovalle,* 13 S.W.3d at 786; *Almanza,* 686 S.W.2d at 171.

16. *Kirsch v. State,* 357 S.W.3d 645, 649 (Tex. Crim.App.2012).

by the evidence regardless of the strength of the evidence.[17] A defendant need not testify in order to raise a defense.[18] Defensive issues may be raised by the testimony of any witness, even those called by the State.[19] It is not the court's function to determine the credibility or weight to be given the evidence raising the issue.[20] The fact that the evidence raising the issue may conflict with or contradict other evidence in the case is not relevant to the determination of whether a charge on the issue must be given.[21] This rule is designed to ensure that the jury, not the judge, will decide the relative credibility of the evidence.[22] The Texas Court of Criminal Appeals instructs us that "[w]hen a judge refuses to give an instruction on a defensive issue because the evidence supporting it is weak or unbelievable, he effectively substitutes his judgment on the weight of the evidence for that of the jury." [23]

The necessity defense is a justification defense.[24] Subsection (1) of penal code section 9.22 provides the basic two-prong test that a defendant must satisfy to be entitled to a jury instruction on the defense of necessity.[25] First, a defendant is required to present evidence that he reasonably believed a specific harm was imminent.[26] "Imminent" means something that is impending, not pending.[27] Harm is imminent when there is an emergency situation and it is "immediately necessary" to avoid that harm.[28]

Second, a defendant must present evidence that he reasonably believed the criminal conduct was immediately necessary to avoid the imminent harm.[29] A "reasonable belief" is a belief that would be held by an ordinary and prudent person in the same circumstances as the actor.[30] Generally, whether an accused's belief is reasonable is a question of fact and should be viewed from the accused's standpoint at the time he acted.[31]

17. *Brown v. State*, 955 S.W.2d 276, 279 (Tex. Crim.App.1997).

18. *Boget v. State*, 40 S.W.3d 624, 626 (Tex. App.–San Antonio 2001), *aff'd*, 74 S.W.3d 23, 26 (Tex.Crim.App.2002).

19. *Jackson v. State*, 110 S.W.3d 626, 631 (Tex. App.–Houston [14th Dist.] 2003, pet. ref'd).

20. *Gibson v. State*, 726 S.W.2d 129, 132–33 (Tex.Crim.App.1987) (op. on reh'g).

21. *Id.* at 133.

22. *Miller v. State*, 815 S.W.2d 582, 585 (Tex. Crim.App.1991) (op. on reh'g); *Woodfox v. State*, 742 S.W.2d 408, 409–10 (Tex.Crim.App. 1987).

23. *Granger v. State*, 3 S.W.3d 36, 38 (Tex. Crim.App.1999) (citing *Miller*, 815 S.W.2d at 585, and *Woodfox*, 742 S.W.2d at 410).

24. Tex. Penal Code Ann. § 9.22 (West 2011); *Young v. State*, 991 S.W.2d 835, 839 (Tex. Crim.App.), *cert. denied*, 528 U.S. 1063, 120 S.Ct. 618, 145 L.Ed.2d 513 (1999); *see* Tex. Penal Code Ann. § 9.02 (West 2011).

25. *See* Tex. Penal Code Ann. § 9.22(1).

26. *See id.*; *Johnson v. State*, 650 S.W.2d 414, 416 (Tex.Crim.App.1983), *overruled on other grounds by Boget*, 74 S.W.3d at 31; *Brazelton v. State*, 947 S.W.2d 644, 648 (Tex.App.–Fort Worth 1997, no pet.).

27. *Jackson v. State*, 50 S.W.3d 579, 595 (Tex. App.–Fort Worth 2001, pet. ref'd); *see Mercer v. State*, No. 02–11–00024–CR, 2012 WL 310501, at *2–3 (Tex.App.–Fort Worth Feb. 2, 2012, no pet.) (mem. op., not designated for publication).

28. *Jackson*, 50 S.W.3d at 595.

29. *See* Tex. Penal Code Ann. § 9.22(1); *Brazelton*, 947 S.W.2d at 648.

30. Tex. Penal Code Ann. § 1.07(a)(42) (West Supp.2015).

31. *Fitzgerald v. State*, 782 S.W.2d 876, 885 (Tex.Crim.App.1990); *Gamino v. State*, 480 S.W.3d 80, 90 (Tex.App.–Fort Worth 2016, pet. filed); *Brazelton*, 947 S.W.2d at 648; *Jua-*

The necessity defense is based on the confession-and-avoidance doctrine, which requires a defendant to admit to both the act or omission and the requisite mental state.[32] A defendant must admit to each element of the offense, including both the act and the requisite mental state, to claim the justification to excuse his otherwise criminal conduct.[33] When the defensive evidence does no more than attempt to negate an element of the offense, a defendant is not entitled to a defensive instruction on any defense subject to the confession-and-avoidance doctrine.[34]

Appellant did state in his interview with police that he was afraid that the other two men who committed the robberies would kill him if he did not participate. The State argues that he did not describe a true necessity situation. Closely examining the record as a whole, including the recording of Appellant's confession, we hold that he was not entitled to a necessity instruction because he did not admit to both the criminal act and the requisite culpable mental state. Indeed, he claimed that the robbers were unknown to him but that he participated because they threatened to kill him. Yet, he also admitted that he did know one of the men and that they all went to the store together intending to commit robbery. Appellant stated, however, that he thought it was a bad idea and that he took the money from the cash register because the drawer was open and because he needed the money. Specifically, Appellant said that he indicated to the gunmen that he was participating in the robberies because of the threats, but he never admitted that he took the cash as part of the robberies or that he threatened anyone. The only part of the robberies that Appellant admitted to was entering the store ahead of the gunmen, but he claimed that he did so intending to warn the cashier. Appellant admitted no culpability in the robbery of the customer. Because Appellant did not admit all the elements of either offense, the trial court properly refused his requested necessity instruction in each case. We overrule Appellant's fourth point.

## VI. Instruction on Lesser-Included Offense in Case Involving Cashier

In his fifth point, Appellant argues that he was entitled to a jury instruction on the lesser-included offense of theft in the case concerning the aggravated robbery of the cashier because he was not a party to that offense. We have already held that Appellant was in fact a party to both aggravated robberies, but we will nevertheless address his point. We use a two-step analysis to determine whether an appellant was entitled to a lesser-included offense instruction.[35] First, the lesser offense must come within article 37.09 of the code of criminal procedure.[36] Second, if the offense is determined to be a lesser-included offense under article 37.09, some evidence must exist in the record that would permit a jury to rationally find that if the appellant is guilty, he is guilty only

---

rez v. State, 886 S.W.2d 511, 514 (Tex.App.–Houston [1st Dist.] 1994, pet. ref'd).

**32.** *Juarez v. State,* 308 S.W.3d 398, 404 (Tex. Crim.App.2010).

**33.** *Villa v. State,* 417 S.W.3d 455, 462 (Tex. Crim.App.2013).

**34.** *Id.*

**35.** *Hall v. State,* 225 S.W.3d 524, 528 (Tex. Crim.App.2007); *Rousseau v. State,* 855 S.W.2d 666, 672–73 (Tex.Crim.App.), *cert. denied,* 510 U.S. 919, 114 S.Ct. 313, 126 L.Ed.2d 260 (1993).

**36.** Tex.Code Crim. Proc. Ann. art. 37.09 (West 2006); *Moore v. State,* 969 S.W.2d 4, 8 (Tex. Crim.App.1998).

of the lesser offense.[37] The evidence must be evaluated in the context of the entire record.[38] There must be some evidence from which a rational jury could acquit the appellant of the greater offense while convicting him of the lesser-included offense.[39] This second step of the analysis is a question of fact based on the evidence admitted at trial.[40] A defendant is entitled to an instruction on a lesser-included offense if anything more than a scintilla of evidence from any source raises a fact issue whether he is guilty of only the lesser-included offense, regardless of whether the evidence is weak, impeached, or contradicted.[41]

The State and Appellant agree that under article 37.09, theft is a lesser-included offense of aggravated robbery as alleged in the indictments.[42] The question is whether there is evidence that Appellant is guilty, if at all, only of theft and not of aggravated robbery. A person commits the offense of aggravated robbery if:

- in the course of committing theft as defined in Chapter 31 and

- with intent to obtain or maintain control of the property,

- he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death, and

- he uses or exhibits a deadly weapon.[43]

As for theft, "[a] person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property."[44]

Appellant concedes in his brief that he committed theft but denies that he participated in the aggravated robbery of the cashier:

Appellant stated [in his confession that] he was with the two gunmen before the robbery and they showed him their guns and told him of their plan to rob the store, threatening and pressuring him to participate. However, Appellant did not admit to ever agreeing to participate in the robbery, but instead stated he was going to warn the clerk when he went in the store alone so she could lock the doors, but the bystander was at the cash register so he did not have the chance before the gunmen came in.

Appellant admitted to the detective that, even though he did not intend to commit aggravated robbery of the clerk with the gunmen, after the robbers came in and the clerk ran away from the register, he seized upon the opportunity to steal money from the open cash drawer. Thus, in essence, Appellant admitted he actually committed a theft from the store during the course of a robbery. Appellant did not have a gun nor a mask, did not enter with the robbers, never ordered the clerk to do anything, never helped the robbers threaten the

---

37. *Hall*, 225 S.W.3d at 536; *Salinas v. State*, 163 S.W.3d 734, 741 (Tex.Crim.App.2005); *Rousseau*, 855 S.W.2d at 672–73.

38. *Moore*, 969 S.W.2d at 8.

39. *Id.*

40. *Cavazos v. State*, 382 S.W.3d 377, 383 (Tex. Crim.App.2012).

41. *Hall*, 225 S.W.3d at 536; *Moore*, 969 S.W.2d at 8; *Bell v. State*, 693 S.W.2d 434, 442 (Tex.Crim.App.1985).

42. *See Bignall v. State*, 887 S.W.2d 21, 23 (Tex.Crim.App.1994) ("No dispute exists that a completed theft is a lesser included offense of aggravated robbery.").

43. *See* Tex. Penal Code Ann. §§ 29.02(a)(2), 29.03(a)(2) (West 2011).

44. *Id.* § 31.03(a) (West Supp.2015).

victims, and he never threatened anyone in the store. [Record references omitted.]

While there is caselaw holding that a defendant who was merely present when his companion assaulted another was not guilty of robbery although they both subsequently took money and a watch from the complainant, because there was no evidence of a previous agreement to rob the complainant, no evidence that the defendant aided in or encouraged the assault, and no evidence that the defendant had knowledge of the companion's intent to assault the complainant,[45] those are not the circumstances here. Appellant's position was that he saw the aggravated robbery of the cashier in progress and decided to jump in and grab some money for himself. That is, he admits that he inserted himself into the offense in progress but made no threats; he claims that he merely committed theft while someone else was brandishing firearms.

■■■■ The law of parties, described in section 7.02(a) of the penal code, requires no agreement.[46] In the case now before this court, Appellant, even if his version is accepted in whole, made himself a party to the aggravated robbery of the cashier by taking advantage of the fear induced by the men waving firearms, in part to force the cashier away from the cash register, and by jumping over the counter to then take money out of the cash register. The trial judge, the jury, and this court all have the advantage of seeing the entire transaction on video. Appellant's position that there was no prior agreement and that he did not participate in the threats, which appears to contradict the video evidence and the evidence that after the aggravated robberies, Appellant and the other two assailants divided the spoils, does not defeat his culpability as a party to the aggravated robbery of the cashier. Under the limited facts of this case—in which Appellant admits and the video reveals that he inserted himself into the aggravated robbery of the cashier, taking advantage of the other men's actions—the law of parties defeats his claim that he was entitled to a jury instruction on the lesser-included offense of theft.

In another version of how he became involved in the aggravated robbery of the cashier, Appellant admitted that he and the two gunmen had come to the store to commit the robbery but contended that afterward the other two men committed the second robbery. The record shows that Appellant instructed the two gunmen to take the cashier's telephone and the store phone but not to steal the customer's money because they had "come for the store." This additional evidence nevertheless supports the trial court's denial of the theft instruction because, again, the gravamen of robbery is assaultive conduct, not theft,[47] and the evidence shows that Appellant was a party to the assaultive conduct directed at both complainants. There is no evidence that Appellant is guilty, if at all, only of theft and not of aggravated robbery of the cashier. We therefore hold that the trial court did not err in refusing to instruct the jury on the lesser-included offense of theft in the aggravated robbery involving the cashier, and we overrule Appellant's fifth point.

---

**45.** See James v. State, 144 Tex.Crim. 126, 161 S.W.2d 285, 286 (1942).

**46.** Tex. Penal Code Ann. § 7.02(a) (West 2011).

**47.** Hawkins, 6 S.W.3d at 560.

## VII.   Conclusion

Having overruled Appellant's five points, we affirm the trial court's judgments.